IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 13-20613-CMB |
| WISHGARD, LLC, | ) | Chapter 7 |
| Alleged Debtor. | ) | |
| WISHGARD, LLC, | ) | |
|  | ) | Doc. No. 12 |
| Movant, | ) | |
| v. | ) | |
| SOUTHEAST LAND SERVICES, LLC, and BRIGHTON RESOURCES, INC., | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION**

The matter before the Court is the Motion of Wishgard, LLC ("Wishgard") to Dismiss Involuntary Bankruptcy Petition ("Motion to Dismiss").[1] The Motion to Dismiss is opposed by Southeast Land Services, LLC ("Southeast") and Brighton Resources Inc. ("Brighton"), the entities that filed the involuntary petition, and Raymond Bauman ("Mr. Bauman"), who

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(A), and the Court will enter final judgment. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

1

subsequently joined in the petition (collectively, the "Petitioning Creditors").[2] Upon stipulation of the parties, the sole issue before this Court is whether any one of the Petitioning Creditors was eligible to file the involuntary petition against Wishgard under 11 U.S.C. §303(b). For the reasons stated herein, this Court finds that at least one of the Petitioning Creditors was eligible to file the involuntary petition. Therefore, the Motion to Dismiss is denied. Accordingly, entry of the order for relief is appropriate.

**I.  Background and Procedural History**

Wishgard is a Pennsylvania limited liability company that operates in the oil and gas industry, primarily in Southeastern and Northeastern Ohio, with a principal place of business in Eighty Four, Pennsylvania. Wishgard leases oil and gas rights from landowners for the purpose of packaging and selling and/or assigning these leases to third parties that seek the opportunity to drill for oil and gas on the landowner's property. As part of its operations, Wishgard contracts with certain "landmen" who solicit landowners to enter into oil and gas leases with Wishgard. Additionally, Wishgard engages various title abstracting companies to perform title searches and prepare title reports related to the oil and gas rights leased by Wishgard.

On February 13, 2013, Southeast and Brighton filed a Chapter 7 Involuntary Petition against Wishgard alleging, *inter alia*, that they were eligible to file the petition pursuant to §303(b) and that Wishgard was not generally paying its debts as they became due. On February

---

[2] The caption of this Memorandum Opinion and the accompanying Order is that of the Motion to Dismiss, which did not include Mr. Bauman as a Respondent. Nonetheless, Mr. Bauman has participated in this matter as a Petitioning Creditor and he is included in the caption of subsequent filings as a Respondent in this matter.

2

25, 2013, Mr. Bauman was added to the case and joined Southeast and Brighton as a petitioning creditor as indicated in the subsequently filed Notice of Joinder.

On March 7, 2013, Wishgard filed its Motion to Dismiss alleging (1) that the Petitioning Creditors were ineligible to file the involuntary petition as each of their claims is subject to a bona fide dispute, and (2) that Wishgard is generally paying its undisputed debts as they become due. In addition, Wishgard sought attorneys' fees and costs pursuant to §303(i)(1). Petitioning Creditors filed a Response in Opposition to the Motion to Dismiss contesting the alleged bases for dismissal and asserting that the request for attorneys' fees and costs was premature.

Pursuant to this Court's Scheduling Order, each of the parties filed a pretrial statement and brief. The parties also filed the Joint Stipulation of Facts and Exhibits of Wishgard, LLC and Southeast Land Services, LLC, Brighton Resources, Inc., and Raymond Bauman ("Joint Stipulation"). The Joint Stipulation narrowed the issue before the Court to a determination of whether any one of the Petitioning Creditors was eligible to file the involuntary petition under §303(b).

An evidentiary hearing was held on April 4, 2013. At that time, the following witnesses testified: Edward Tygard ("Mr. Tygard," also referred to at times by the parties and in the exhibits as "Kip"), a principal and the managing partner of Wishgard; Eric Jenevein, a regional manager for Southeast; Brendan McCarthy, the chief executive officer and owner of Brighton; Daniel Nabuda, former director of operations at Brighton on the Wishgard project; and Mr. Bauman, who served as an independent contracting landman for Wishgard.

Following the hearing, the parties were provided the opportunity to file additional briefs. The briefs have been filed, and the matter is ripe for decision.

**II.    Facts**[3]

The Court will separately address each of the Petitioning Creditors' claims.

Southeast's Claim

On May 7, 2012, Wishgard and Southeast entered into a Professional Services Agreement (the "Southeast/Wishgard Agreement") wherein Southeast agreed to perform title abstracting services for Wishgard. Southeast prepared forty-six title reports for Wishgard, forty-three of which were provided to Wishgard. Therefore, Southeast has not delivered some work product for which it seeks payment, which amounts to three title reports and a Geographic Information Systems ("GIS") map.

The total fees Southeast invoiced to Wishgard for the title searches was $197,450 and the total expenses Southeast invoiced to Wishgard was $80,557.53, for a total of $278,007.53. Wishgard made two payments to Southeast in June 2012, totaling $71,016.58. Wishgard received four invoices dated July 1, 2012 through August 15, 2012, which it did not pay. On December 19, 2012, counsel to Southeast sent Wishgard a letter demanding payment of the remaining $206,990.95 (the "Southeast Demand"), which was not paid. In response to the Southeast Demand, on January 17, 2013, Mr. Tygard sent Southeast an email stating, among other things:

> I understand your position and concern. Please consider having your attorney
> draw up some kind of acknowledgement of debt document that includes a
> timeline and reasonable interest charge and I will sign it almost immediately . . . .
> If we are forced to go through the courts (which won't happen as we are close to
> paying) you will essentially have an admittance of guilt from Wishgard.

---

[3] The facts set forth herein are taken primarily from the Parties' Joint Stipulation and reflect undisputed facts.

4

At no time prior to the petition did Wishgard advise Southeast that it disputed the unpaid invoices. Furthermore, Wishgard advised Southeast on multiple occasions that it would be paid in full.

In the Petition, Southeast claims that it is owed $206,990.95. Mr. Tygard contends that Wishgard owes *nothing* to Southeast.

Mr. Bauman's Claim

On March 17, 2011, Wishgard entered into an Agreement to Market Oil and Gas Rights with Mr. Bauman (the "Bauman/Wishgard Agreement"). Pursuant to the Bauman/Wishgard Agreement, Mr. Bauman agreed to serve as an independent contracting landman for Wishgard and to use his best efforts to, *inter alia*, obtain leases for Wishgard. The terms and conditions of the Bauman/Wishgard Agreement provide that Mr. Bauman shall receive $25 for each acre of real property he solicits and which is ultimately sold/assigned by Wishgard to a third party buyer. The commission is payable upon receipt of payment by the third party purchaser/lessee to Wishgard.

In 2011, Wishgard paid Mr. Bauman $8,400 and $4,400. In 2012, Mr. Bauman and Wishgard, through Mr. Tygard, had numerous discussions regarding the remaining amount owed him by Wishgard. On October 30, 2012, Mr. Tygard sent Mr. Bauman an email stating that "I just don't have any money right now. I have drained every asset I have to keep Wishgard from collapsing under." On December 27, 2012, Mr. Tygard sent Mr. Bauman an email stating "If I had the money, you would have your check. But we don't have any money … NONE! However, we do have holdings that are close to selling and I believe you won't have to wait much longer." In consideration for the delay in payment, Mr. Tygard indicated that he would compensate Mr.

5

Bauman an additional $10,000, despite the fact that this amount was not owed pursuant to the terms of the Bauman/Wishgard Agreement. In 2013, Wishgard remitted a check to Mr. Bauman in the amount of $4,000 on January 1 (the "Bauman Check"). The Bauman Check contained a handwritten note in the memo line that stated "$51k still owed." Wishgard admits that it owes Mr. Bauman for services he rendered to Wishgard, and in fact, Wishgard advised Mr. Bauman on more than one occasion that he would be paid.

In the Petition, Mr. Bauman claims that he is owed at least $101,157. Although Wishgard admits that it owes Mr. Bauman more than $14,425, Wishgard disputes that it owes Mr. Bauman the amount he is claiming.

Brighton's Claim

On November 28, 2011, Wishgard and Brighton entered into a Professional Services Agreement (the "Brighton/Wishgard Agreement") wherein Brighton agreed to perform title abstracting services for Wishgard. Pursuant to said Agreement, Brighton was to provide the following in regard to fees for services: $375.00 per day for fees for professional services rendered by Brighton contractors/employees for performing abstract services in Ohio and $350.00 per day for professional services provided by Brighton contractors/employees performing GIS mapping services. Certain invoices prepared by Brighton and delivered to Wishgard charged $425 and $450 per day for several individuals performing work on Wishgard projects.

Wishgard received fifteen invoices dated June 21, 2012 through September 4, 2012 from Brighton which it did not pay. On September 7, 2012, counsel to Brighton sent Wishgard a letter regarding Wishgard's balance due of $934,844.17 and demanding payment (the "Brighton

6

Demand"). Wishgard responded by electronic mail stating that "there is no doubt I will get you your money and hand you an advance on future work" and that "I do look forward to paying you." However, Wishgard did not pay the amount stated in the Brighton Demand. Wishgard admits that, had it successfully closed on a deal in 2012 generating sufficient cash to pay Brighton's claim, Wishgard would have paid Brighton in full. Wishgard advised Brighton on more than one occasion that it would be paid in full.

On November 26, 2012, Brighton filed a complaint against Wishgard in Ohio. Wishgard failed to timely answer or respond despite Mr. Tygard's admission that a copy of the complaint was received. Also, Brighton filed a motion for default judgment in that case to which no response was filed. Prior to the filing of the involuntary petition, Wishgard did not advise Brighton that it disputed the unpaid invoices.

In the Petition, Brighton claims that it is owed $934,000.00. Although Wishgard admits that it owes Brighton some amount, it disputes the accuracy of the amount claimed.

In light of these undisputed facts, the Court turns to whether dismissal is appropriate under §303.

### III.   Conclusions of Law

In the Motion to Dismiss, Wishgard asserted two grounds for dismissal of the involuntary petition: (1) the eligibility of the Petitioning Creditors to file the petition in the first place pursuant to 11 U.S.C. §303(b), and (2) the assertion that Wishgard was generally paying its undisputed debts as they came due as set forth in §303(h). The standing of petitioning creditors under §303(b) as an initial matter determines whether a court must address §303(h).

7

Standing to file an involuntary petition is determined pursuant to §303(b), which provides as follows:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $14,425 of such claims[.]

In this case, Wishgard concedes that it has fewer than twelve creditors. Furthermore, the parties have stipulated to the fact that "[a]t least one of the Petitioning Creditors holds an undisputed claim in the amount of at least $14,425." The point of contention is whether, regardless of this fact, each of the Petitioning Creditors' claims is "the subject of a bona fide dispute as to liability or amount" thus making each ineligible to file an involuntary petition under the terms of §303(b).

Section 303(h)(1) provides one circumstance under which a court shall order relief against a debtor in an involuntary case:

> (h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if--
> (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount[.]

As provided in the Joint Stipulation and as confirmed on the record at the commencement of the evidentiary hearing, the parties advised the Court that, if this Court finds that at least one of the

8

Petitioning Creditors was eligible to file the involuntary petition, then Wishgard does not contest that it is not generally paying its debts as they come due for purposes of §303(h)(1).[4] Therefore, the only prerequisite to entry of the order for relief against Wishgard is a determination of the eligibility of at least one of the Petitioning Creditors to file the involuntary petition.

Initially, the burden is on the Petitioning Creditors to provide *prima facie* evidence that their claims are not subject to a bona fide dispute. *See In re VitaminSpice*, 472 B.R. 282, 290 (Bankr.E.D.Pa.2012). If Petitioning Creditors meet their burden, then the burden shifts, and Wishgard must establish that a bona fide dispute exists with respect to the claims asserted. *Id.* "Ultimately, whether a petitioning creditor's claim is the subject of a bona fide dispute is determined by whether 'there is a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts.'" *Id.* (quoting *B.D.W. Assocs., Inc. v. Busy Beaver Bldg. Ctrs., Inc.,* 865 F.2d 65 (3d Cir. 1989)).[5]

As a preliminary matter, the Court notes the split of authority with respect to the interpretation of §303(b) following the amendment of the statute by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. *See In re Skyworks Ventures, Inc.*, 431 B.R. 573, 578, n.1 (Bankr.D.N.J. 2010) (noting the divergence in case law). The amendment added the phrase "as to liability or amount" following "bona fide dispute." As discussed in *In re Regional Anesthesia Assocs. PC,* prior to the amendments, a dispute as to only the amount of a claim was not a bona fide dispute as to the entire claim. 360 B.R. 466, 469 (Bankr.W.D.Pa.

---

[4] The Court notes that the record is replete with indices of Wishgard's inability to pay its debts.

[5] The Court notes that determination of the instant matter does not require and is not intended to be a resolution of a disputed claim nor liquidation of a claim. The purpose of the Memorandum Opinion and Order is solely to resolve the eligibility of the Petitioning Creditors to file the involuntary petition.

9

2007) (citing *In re Euro-American Lodging Corp.*, 357 B.R. 700 (Bankr.S.D.N.Y. 2007)). However, as a result of the amendment to §303(b), some courts interpret the statute to provide that "any dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a bona fide dispute." *Id.* at 469-470. *See also In re Metro Cremo & Sons, Inc.,* No. 1:08-bk-01798MDF, 2008 WL 5158288, at *4, n.8 (Bankr.M.D.Pa. Sept.29, 2008) (noting agreement with this interpretation). To the contrary, others have held that the amendment to §303(b) does not disqualify a petitioning creditor simply on the basis that a portion of the claim is disputed provided that the undisputed portion of the claim meets the statutory threshold. *See In re Miller*, No. 12-33942, 2013 WL 987771, *4-7, 2013 Bankr. LEXIS 85, *12-19 (Bankr.E.D.Tenn. Jan. 9, 2013) (setting forth a thorough analysis in support of this interpretation). Although this Court finds the analysis in *Miller* to be the persuasive interpretation, the issue need not be decided herein as at least one of the Petitioning Creditors, Southeast, qualifies under either interpretation of §303(b).

Southeast's Claim

  Southeast provided *prima facie* evidence that its entire claim is not the subject of a bona fide dispute as to liability or amount by virtue of the Southeast/Wishgard Agreement, Southeast's invoices, and the testimony of Mr. Jenevein. In addition, approximately one month prior to the bankruptcy filing in response to the Southeast Demand, Mr. Tygard represented that he would provide an acknowledgement of debt to Southeast.

  The Court notes Wishgard's contention that an acknowledgment of debt or any promise to pay the Petitioning Creditors is nothing more than Mr. Tygard's subjective belief regarding the validity of the claim and is therefore not relevant for purposes of this analysis. In support of

10

this contention, Wishgard cites to *In re Busick,* 831 F.2d 745 (7th Cir. 1987) and *In re Frailey*, 144 B.R. 972 (Bankr.W.D.Pa. 1992). The Court does not interpret these cases as Wishgard does. *Busick* recognizes that there must be an objective basis to *defeat* an involuntary petition as otherwise the alleged debtor would prevail on nothing more than a good faith, subjective belief that his challenge to the petitioning creditor's claim was meritorious. *See Busick*, 831 F.2d at 749, n.1. In *Frailey*, the court stated that it must determine whether there was an *objective* basis for either a legal or factual dispute concerning the validity of the debt. *See Frailey,* 144 B.R. at 976. Ultimately, the court found that the petitioning creditors' claims were subject to a bona fide dispute. *Id.* That court, however, was not presented with the facts here, i.e., an admission of the debt prior to the petition. Based upon Wishgard's analysis of §303(b), it seems that a petitioning creditor would be required to obtain a judgment prior to filing an involuntary petition as even an acknowledgment of a debt would prove insufficient under Wishgard's reading of the statute. The Code does not state such a requirement and this Court will not read the language into the statute. Upon review of the evidence presented by Southeast, the burden shifted to Wishgard to establish the existence of a bona fide dispute as to liability or amount.

  Although Wishgard asserts that it owes *nothing* to Southeast, there is no evidentiary support for this assertion, which is entirely inconsistent with Mr. Tygard's willingness to provide "an admittance of guilt from Wishgard" approximately one month before the involuntary petition was filed. At the evidentiary hearing, Mr. Tygard attempted to raise some question as to the quality of Southeast's work, specifically with respect to a GIS map. Although Mr. Tygard asserted that the GIS mapping was not performed to acceptable standards, no evidence was presented as to GIS mapping standards other than Mr. Tygard's own opinion. Despite Mr. Tygard's assertion that there were emails evidencing his complaints, none were introduced into

evidence. The Court finds the contentions to be without evidentiary support and nothing more than a belated attempt to manufacture a bona fide dispute. The Court further notes that Wishgard did not address this alleged dispute in its Post-Trial Brief.

Only two alleged disputes with respect to Southeast's claim are raised in Wishgard's Post-Trial Brief. First, Wishgard contends that Southeast substantially overcharged Wishgard based upon the testimony of Southeast's own representative, Mr. Jenevein. The assertion is misleading and inconsistent with the evidence. After being pressed to provide an estimate, Mr. Jenevein did provide an estimate of the time generally necessary to complete abstracting work. However, he qualified his answer and repeatedly testified that the amount of time is nearly impossible to predict and is dependent upon many variables. Wishgard did not establish the existence of a standard, across the board time-frame for this type of work through Mr. Jenevein's testimony. Significantly, no evidence was produced indicating that Southeast complained of overcharging or the time within which Southeast produced reports to Wishgard prior to the bankruptcy filing. Mr. Jenevein's general estimate, with qualification, is insufficient to create a genuine issue of material fact that bears upon Wishgard's liability.

Second, Wishgard asserts that a bona fide dispute exists because Southeast has not delivered all of the work for which it seeks payment allegedly "in violation of its contractual duties." Wishgard did not cite to any provision in the contract in support of this assertion. Rather, Wishgard cites to the deposition testimony of Mr. Jenevein, who testified that, while typically production of the final product is part of the contractual obligation before payment, this situation was different due to the unpaid invoices. Consistently, at the evidentiary hearing, Mr. Jenevein testified that the completed work product was not delivered due to the delinquency of the invoices and, furthermore, had not been requested by Mr. Tygard prior to the bankruptcy case.

12

Citation to Mr. Jenevein's testimony does not support Wishgard's assertion. Furthermore, Wishgard offered no legal basis for its immediate entitlement to the work done on its behalf in light of the severe delinquency and therefore did not meet its burden to establish a bona fide dispute based on this allegation.

Based upon the evidence, Wishgard failed to establish the existence of a bona fide dispute. If Mr. Tygard believed, as he asserts now, that any one of the above-mentioned allegations support a finding that Southeast is entitled to nothing from Wishgard, surely he would have raised such disputes in response to the Southeast Demand. *Cf. Skyworks Ventures*, 431 B.R. at 578 (addressing the evidence that the alleged debtor disputed the amount of the liability throughout the parties' relationship in advance of the involuntary bankruptcy case). Instead, Mr. Tygard offered to sign an acknowledgment of debt. Mr. Tygard's assertion that Southeast is owed absolutely nothing is completely undermined by the evidence.

Wishgard's attempt to create a dispute is similar to that addressed in *VitaminSpice¸* in which VitaminSpice contended that the claim of the petitioning creditor, Robison, was nothing more than "a trumped-up and phony debt, nowhere near bona fide and . . . hotly contested in a separate case pending in Pennsylvania state court." 472 B.R. at 292-93. Simply alleging a dispute, however, is not sufficient. The bankruptcy court found as follows:

> Based on this Court's review of the evidence regarding the Robison claim, including copies of the agreements setting forth the terms of VitaminSpice's obligations to Robison, evidence that Robison fulfilled the contractual prerequisites to his claim, and VitaminSpice's records acknowledging the loan as a valid liability . . . , this Court finds that the Petitioning Creditors have established that Robison holds a bona fide claim against VitaminSpice. VitaminSpice's unsupported denials of liability, including [its CEO's] claim that his signatures on the loan documents were forged, are insufficient to rebut their prima facie validity.

*Id.* at 293. Similarly, Wishgard's unsupported assertions fail. Southeast's claim is not subject to a bona fide dispute as to liability or amount. The Court finds Southeast to be an eligible petitioning creditor under §303(b). Accordingly, the Motion to Dismiss is denied and entry of an order for relief in this case is appropriate.

Although it is only necessary in this case to find one eligible petitioning creditor under §303(b), the Court will also briefly address the standing of the other Petitioning Creditors.

Mr. Bauman's Claim

Mr. Bauman failed to provide *prima facie* evidence in support of the *full* amount of his claim. It is clear that Mr. Bauman's entitlement to payment from Wishgard was dependent upon Wishgard receiving payment from a third party. Mr. Bauman's claim consists, in part, of leases that he contends were to be purchased pursuant to an agreement between Wishgard and an entity referred to as Eclipse. However, Mr. Bauman admitted that he did not know if Wishgard ever received payment from the alleged deal with Eclipse, and Mr. Tygard testified that Wishgard received no payment from Eclipse. Therefore, there is insufficient evidence to support Mr. Bauman's entitlement to payment of his total claim in the amount of $101,157.

Mr. Bauman is a clear example of a petitioning creditor whose eligibility would be determined based upon the interpretation of §303(b) as amended in 2005. That is, it is undisputed that Wishgard owes Mr. Bauman more than the threshold amount of $14,425. In fact, the Bauman Check indicates a debt of at least $51,000.[6] However, at least as to the amount claimed

---

[6] At his deposition, Mr. Tygard estimated, giving Mr. Bauman the benefit of any doubt, that Mr. Bauman was owed approximately $37,500. The Court notes, however, that no explanation was provided as to how he arrived at that amount or why this amount differed from the $51,000 admittedly owed as noted on the Bauman Check.

14

in excess of $51,000, a genuine issue of a material fact exists as to Wishgard's liability to Mr. Bauman. Thus, Mr. Bauman may not qualify as a petitioning creditor to the extent the statute is interpreted to exclude those creditors whose claims are undisputedly above the threshold amount but are nonetheless the subject of a bona fide dispute as to the total amount. As stated *supra*, this Court is not persuaded that the amendment to §303(b) requires disqualification of a petitioning creditor on this basis. Nonetheless, the issue need not be resolved at this time due to Southeast's standing as a petitioning creditor.

Brighton's Claim

Brighton provided *prima facie* evidence of its claim by virtue of the Brighton/Wishgard Agreement, the invoices, and the testimony of Mr. Nabuda and Mr. McCarthy, particularly to extent the invoices differed from the terms of the Agreement. Significantly, Wishgard filed no answer in the state court action in which Brighton subsequently filed a motion for default judgment.[7] Also noteworthy is the evidence of Mr. Tygard's repeated intention of paying the claim in full and promise of future work. Accordingly, the burden shifted to Wishgard to establish the existence of a bona fide dispute as to liability or amount.

Although Wishgard asserted several bases upon which it disputed the amount of Brighton's claim, all but one are easily rebuffed upon review of the evidence. With respect to increased rates charged, Mr. Nabuda's testimony regarding agreed changes to rate as the scope of

---

[7] Although Brighton may be entitled to entry of default judgment, even a default judgment alone, while perhaps indicative, is not dispositive as to the existence of a bona fide dispute. The Court notes the split in case law as to whether even an unstayed *non-default* judgment on appeal is alone sufficient to guarantee the lack of a bona fide dispute. *See Marciano v. Chapnick* (*In re Marciano*), 708 F.3d 1123, 1126 (9th Cir. 2013)(discussing the majority and minority approaches). Clearly, the interpretation of §303(b) has divided courts.

work increased was undisputed on the record. The evidence supports Mr. Nabuda's testimony as the invoices clearly reflect the higher daily rates. The evidence fails to establish a bona fide dispute.

Wishgard also asserts that Brighton's claim includes work that was finished but not produced as well as work that was not completed. However, it was clear on the record that Brighton began work for Wishgard which was stopped due to the severe delinquency in payment. As Wishgard was not paying the invoices, Brighton was not doing additional work, without pay, to complete projects. Wishgard's argument is also undermined by the undisputed evidence that Mr. Tygard implored Brighton to continue its work despite the past due invoices and further guaranteed payment. To its detriment, Brighton relied upon these representations and further extended itself on Wishgard's behalf. Thus, Wishgard's allegations of incomplete and unproduced work are misleading and a transparent attempt to manufacture a dispute.

However, whether Wishgard was aware of and agreed to being charged for, at times, multiple internal reviews of work product is not clear on the record and creates a genuine issue of material fact as to that portion of Brighton's claim. Mr. Tygard testified that he was unaware that some Brighton employees were being paid to double and triple-check the work of others. In contrast to the undisputed evidence that the parties agreed to higher daily rate charges for certain Brighton employees and such rates were clear on the face of the invoices, with respect to charges for internal reviews of work product, it is unclear from either the Brighton/Wishgard Agreement or the invoices that Wishgard was aware of such charges. Notably, while this dispute was not raised until after the bankruptcy filing, discovery of these charges appears to require a more extensive analysis than a simple review of the invoices. In addressing the eligibility of a

petitioning creditor under §303(b), courts are to determine whether a bona fide dispute exists, not decide the dispute.

Although Wishgard conceded that it owed some amount to Brighton, no specific amount was admitted. It is highly unlikely that subtracting the disputed charges for review work would reduce Brighton's claim from $934,000 to below the threshold amount of $14,425 set forth in §303(b). Therefore, as was the case with Mr. Bauman, Brighton's eligibility to file the involuntary petition hinges upon the interpretation of the amendment to the statute. As stated above, this Court is not persuaded that Brighton is excluded on this basis. Nonetheless, Southeast had standing to file the involuntary petition and the Court need not resolve the issue.

## IV.    Conclusion

For the foregoing reasons, this Court finds that at least one Petitioning Creditor, Southeast, was eligible to file the involuntary petition against Wishgard. Accordingly, the Motion to Dismiss is denied. An appropriate order will be entered.

Date: April 25, 2013                                     /s/ Carlota M. Böhm
                                                         Carlota M. Böhm
                                                         United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
   Office of the United States Trustee
   Kirk B. Burkley, Esq. and Joshua C. Lewis, Esq.
   Mark S. Frank, Esq. and Kathryn L. Harrison, Esq.
   Wishgard, LLC
   Southeast Land Services, LLC
   Brighton Resources, Inc.
   Raymond Bauman